## ELI STILSON v. CHARLES GIBBS.

*Execution—Exemptions—Support of children—Responsibility of levying officer—Damages for wilful trespass—Costs.*

1. The exemption from execution of six months provision for a householder *and his family* is for the benefit of those of his children who are over age as well as those who are under, if they have no home elsewhere than with their father.

2. A father is contingently liable for the support of children who are over age, in case they become a public charge.

3 If a defendant in execution has not been allowed to exercise his statutory right to choose what he is entitled to have exempted, he can elect to take what has been sold under the execution and may sue the levying officer for its value.

4. An officer who has levied on a crop of wheat and threshed it can be held responsible for what has been wasted in threshing as well as for what has been taken.

5. Elements of damage which do not appear in the case must not be suggested in the charge to the jury.

6. Damages for a wilful trespass may be properly based upon all the circumstances of aggravation attending it; but the real purpose of the action is to compensate the plaintiff for the injuries he has suffered and not to punish the defendant.

7. In affirming a judgment for plaintiff in a case in which it was plain that he ought to recover and that the errors committed had not materially swelled his recovery, the judgment for costs was reversed and no costs were allowed to either party in the appellate court.

Error to Kalamazoo.   (Arnold, J.)   Feb. 7.—April 9.

CASE.   Defendant brings error.   Reversed as to costs.

*Arthur Brown* for appellant.

*Edwards & Stewart* for appellee.   The term "family" includes a servant or dependent relations in the household: *Weed v. Dayton* 13 Am. L. Reg. (N. S.) 603; a levy on property of a class exempt by law is invalid and a trespass ab initio if the judgment debtor has not had an opportunity to make his selection: *Town v. Elmore* 38 Mich. 305; *Vanderhorst*

*v. Bacon* 28 Mich. 669; *Elliott v. Whitmore* 5 Mich. 532; *Alvord v. Lent* 23 Mich. 369.

COOLEY, C. J. This case has twice before been in this Court, and is reported in 40 Mich. 42, and 46 Mich. 215. On the first two trials the defendant had judgments which were reversed; on the third the plaintiff recovered, and the defendant is now the appellant.

The facts are that the plaintiff, in August, 1876, was occupant of a farm in the county of Kalamazoo, owned by his wife, and had harvested and stored in the barn a crop of wheat. He had living with him at the time eleven children, two of whom were over the age of twenty-one, and worked away from home a part of the time. Plaintiff had prepared for seeding to wheat about forty acres in the fall, and relied for seed wheat, and also for bread, upon the crop in the barn. Defendant was sheriff of Kalamazoo county, and as such had for collection an execution against the plaintiff. One of his deputies, by virtue of this execution, made a levy upon the wheat August 25, 1876, and another went five days later with a threshing machine to the barn, and there, against the protest of the plaintiff, proceeded to thresh it. The entrance upon the premises was forbidden, but was persisted in, and the plaintiff's evidence tended to show that the deputy said it was hard and wrong, and he ought not to do it, but he did it because the defendant's attorney told him to do it. It also tended to show that the machine threshed the grain imperfectly, and much was wasted. When the threshing was completed the grain was taken to a railroad station several miles distant, and there advertised and sold. The plaintiff then sued in trover. He claimed a part of the wheat under the statutory exemption of six months provision for a householder and his family, and another part for seeding, under the provision exempting, to the amount of $250, the tools, implements, stock, etc., necessary to enable him to carry on his business. The defendant gave evidence tending to show that he left in the barn sufficient wheat for plaintiff's family for six months, and he claimed that the plaintiff's children who were over the age of twenty-one

were not to be reckoned as part of his family. Defendant also offered to show that plaintiff had other property to the value of more than $250, which would be exempt to him as tools, implements, stock, etc., and therefore was not entitled to recover for seed wheat.

The circuit judge held that in judging of the exemption of wheat for provisions, the actual family of the plaintiff was to be considered as the family to provide for, even though there might be members for whom the plaintiff would not be legally bound to provide. As applied to the circumstances of this case, we think the instruction was correct. The persons as to whom the question was made were children of the plaintiff, and were properly with him if they had no home elsewhere. Besides, there is always a contingent liability for the support of children who are over age, in case they become a public charge.

It is not error to exclude evidence that the plaintiff had other property which the plaintiff might hold as exempt, as being tools, implements, stock, etc., necessary in his business. The statute requires that the officer shall levy upon all the debtor has of such property, and then permit him to select to the amount exempt. When the officer fails to obey the law, and thereby deprives the debtor of the opportunity to make selection before sale, he may elect to take the property sold and sue for its value. *Wyckoff v. Wyllis* 8 Mich. 48; *Town v. Elmore* 38 Mich. 305.

The circuit judge instructed the jury that the defendant should be held responsible for all the wheat taken by him, including any that might have been wasted by him in the threshing. This was entirely correct.

In giving to the jury the rule of damages, the circuit judge further instructed them that if the defendant took the exempt property knowing that he had no legal right to take it, he might be considered as acting in bad faith; and that when the wrongful act is shown to have been committed willfully, maliciously and wantonly, or with a view of obtaining unlawfully or with a fraudulent intent a benefit to the defendant, or those for whom he acts, by means of the

wrongful acts with reference to the property, or when the wrongful act was committed with insulting and abusive language and deportment, exemplary or punitive damages may be given. This instruction, in substance, was repeated in several forms, and the jury were told that if they found the plaintiff entitled to exemplary damages, they would then take into consideration the invasion of plaintiff's premises by defendant with men and machines under the circumstances as they existed, the intentional wrong done to the plaintiff by the invasion, and by taking away exempt property, etc., and, in view of these instructions, award such exemplary damages as in their discretion, exercising their cool, deliberate judgment, they believed ought to be awarded. Also, that in estimating the amount of their verdict they would add to the exemplary damages, if they found any, the plaintiff's actual damages, with interest.

One objection to these instructions is that they suggested elements of damage not appearing in the case. The record does not show or intimate that there was evidence of insulting and abusive language or deportment; it only appears that the officer, under the instructions of the attorney controlling the execution, persisted in going upon the premises and threshing and removing the wheat, though he did not think it legal to do so. But the principal fault in the instructions is to be found in the distinct presentation of the idea that the jury, after estimating the actual damages of the defendant, might go further and give a further sum, limited only by their discretion, by way of punishment and example.

That all the circumstances attending a willful trespass or other wrong may be given in evidence to the jury, and taken into account by them in estimating damages, is a familiar principle. *Allison v. Chandler* 11 Mich. 542; *Welch v. Ware* 32 Mich. 78 : *Elliott v. Van Buren* 33 Mich. 49: s. c. 20 Am. Rep. 668; *Briggs v. Milburn* 40 Mich. 512. Sometimes the damages which the jury are allowed to give in addition to those which measure an actual injury by a money standard, are spoken of as exemplary damages, but unless this term is properly explained there is great danger that it will mislead

the jury into supposing that, after compensating the plaintiff
to the full extent of his injury they may proceed to punish
the defendant with unlimited discretion. The instructions
given in this case were peculiarly liable to that interpretation.
Under the instructions the damages suffered by the plaintiff,
and the sum to be assessed against him by the jury, in their
discretion, by way of punishment, were to be separately con-
sidered and made up, and the illegal acts of the officer were
to be considered, not necessarily as they damnified or affected
the plaintiff, in feeling or otherwise, but as intrinsically they
were deserving of censure.

The purpose of an action for tort is to recover the dam-
ages which the plaintiff has sustained from an injury done
him by the defendant. In some cases the damages are
incapable of pecuniary estimation; and the court performs
its duty in submitting all the facts to the jury, and leaving
them to estimate the plaintiff's damages as best they may
under all the circumstances. In other cases there may be a
partial estimate of damages by a money standard, but the
invasion of the plaintiff's rights has been accompanied by
circumstances of peculiar aggravation, which are calculated
to vex and annoy the plaintiff and cause him to suffer much
beyond what he would suffer from the pecuniary loss. Here
it is manifestly proper that the jury should estimate the dam-
ages with the aggravating circumstances in mind, and that
they should endeavor fairly to compensate the plaintiff for
the wrong he has suffered. But in all cases it is to be dis-
tinctly borne in mind that compensation to the plaintiff is
the purpose in view, and any instruction which is calculated
to lead them to suppose that besides compensating the plaint-
iff they may punish the defendant is erroneous. The instruc-
tions in this case were of that character. It was proper to
give the jury to understand that they might take into account
all the circumstances in proof before them, and make up
their award of damages in view of them all; but they were
not to be left at liberty, in doing so, to lose sight of the fact
that compensation to the plaintiff was the end in view.

Under ordinary circumstances the error now noted would

render a reversal imperative. But, as has been already mentioned, this is the third time this case has been brought to this court, and the judgment has twice been reversed. The sum involved is small, and the cost of any one of the trials has probably exceeded the amount in controversy. It would be inexcusable to allow the litigation to go on longer if it can now be disposed of finally.

We are satisfied from an examination of the several records which have been brought to this Court that the plaintiff on a trial without errors would recover. We are also satisfied that the recovery he has secured was not swelled materially, if at all, by the erroneous instruction which has been commented on. It would benefit neither party, therefore, to send the case back again. But we do not think the plaintiff ought to recover costs of the trial in which the error was committed, nor the costs of this Court on this writ of error. If we reverse the judgment so far as it gave costs of the last trial, and give costs to neither party in this Court, we think justice will be done as near as it will be in our power to do it. And order will be given accordingly.

CHAMPLIN and CAMPBELL, JJ., concurred. SHERWOOD, J., did not sit.