PARRISH v PARRISH

Docket No. 70781. Submitted April 11, 1984, at Lansing.—Decided
      November 5, 1984.
      Plaintiff, Arlene L. Parrish, brought an action in the Ingham
         Circuit Court seeking a divorce from defendant, Albert L.
         Parrish. Four children were born of the marriage, none of
         whom were minors at the time of the filing of the complaint.
         Laurie Parrish, the parties' youngest child, suffers from cere-
         bral palsy. She was 18 years old at the time of the commence-
         ment of the action and residing with plaintiff. Although the
         trial court, Carolyn Stell, J., did not consider the question of
         child support at trial, the court admitted testimony regarding
         the expenses of Laurie's care and support and recognized .her
         condition and the plaintiff's responsibility for her in awarding
         alimony. The judgment of divorce ordered defendant to pay
         alimony of $25 per week for as long as Laurie is alive and in
         plaintiff's care and custody and as long as plaintiff shall assume
         and pay the expenses of care and custody of Laurie. Defendant
         appeals and plaintiff cross-appeals. Held:
      1. The circuit court, as a court of equity, was not precluded
         from taking into account plaintiff's assumption of responsibility
         for Laurie's support in determining an alimony award.
      2. A circuit court has no jurisdiction to order support to a
         child beyond the age of 18 unless the court previously obtained
         jurisdiction over the child while the child was a minor. There-
         fore, the circuit court had no jurisdiction to order child support
         under the facts of this case and properly refused to consider the
         question of child support.
      3. The trial court had statutory authority to award alimony
         and properly considered plaintiff's assumption of responsibility

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur 2d, Divorce and Separation §§ 233, 657 et seq.
[2, 6] 24 Am Jur 2d, Divorce and Separation § 1049.
[3] 24 Am Jur 2d, Divorce and Separation §§ 542, 659.
[4, 8] 5 Am Jur 2d, Appeal and Error § 868.
   24 Am Jur 2d, Divorce and Separation § 548.
[5] 24 Am Jur 2d, Divorce and Separation § 657 et seq.
[7] 73 Am Jur 2d, Statutes § 206.

for Laurie's support in determining the alimony award. The alimony payments are not disguised child support payments.

4. The alimony award of $25 per week was, under the circumstances, so inadequate as to constitute an abuse of discretion. The case is remanded to provide an opportunity to modify the alimony award in view of the parties' present circumstances.

5. The trial court did not abuse its discretion in regard to the allocation of the marital assets. The court was not obligated to make a finding on the record as to the value of each item. The trial court's allocation of the marital assets is affirmed.

6. The circuit court did not err in adopting defendant's uncontroverted testimony regarding the marital debts. Plaintiff's claim regarding defendant's pension plan was deemed to be not properly before the Court of Appeals.

7. Plaintiff may seek attorney fees and costs incurred on appeal and the trial court may enter an order in accordance with its determination in that regard.

Affirmed in part and remanded for modification of the alimony award.

1. DIVORCE — JURISDICTION — EQUITY — ALIMONY.

Jurisdiction in divorce proceedings is purely statutory, and the jurisdiction of the court is not helped by any consideration of general equities; however, once the court obtains jurisdiction, it may consider general principles of equity in determining an appropriate alimony award.

2. DIVORCE — CHILD SUPPORT — ADULT CHILDREN — JURISDICTION.

A circuit court has no jurisdiction to order support to a child beyond the age of 18 unless the court previously obtained jurisdiction over the child while the child was still a minor (MCL 552.17a; MSA 25.97[1]).

3. DIVORCE — ALIMONY.

A trial court has statutory authority in a divorce action to award alimony if the estate and effects awarded to either party shall be insufficient for the suitable support and maintenance of either party and such children of the marriage as shall be committed to the care and custody of either party; the term "children of the marriage" does not refer only to "minor children" of the marriage (MCL 552.23; MSA 25.103).

4. APPEAL — DIVORCE — ALIMONY.

The Court of Appeals reviews an order of alimony *de novo* and will not modify the award unless it is convinced that, sitting in

the position of the trial court, it would have reached a different result.

5. DIVORCE — ALIMONY.

Courts, in determining whether alimony should be awarded in a divorce action, may consider: (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the ability of the parties to work, (4) the source of and amount of property awarded to the parties, (5) the age of the parties, (6) the ability of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the health of the parties, (10) the prior standard of living of the parties and whether either is responsible for the support of others, and (11) general principles of equity; a party's responsibility for the support of others is not limited to "legal responsibility".

6. PARENT AND CHILD — CHILD SUPPORT — ADULT CHILDREN.

Michigan statutes and the common law provide that parents have no obligation to support their adult children (MCL 552.17a; MSA 25.97[1]).

7. STATUTES — JUDICIAL CONSTRUCTION.

A term used in a statute is to be given its plain and ordinary meaning, absent a statutory definition of the term.

8. DIVORCE — PROPERTY DIVISION — APPEAL.

A trial court has great discretion in the adjustment of property rights in a divorce action; the Court of Appeals will not reverse or modify a property division unless convinced that it would have reached another result if it had occupied the position of the trial court; the record must affirmatively and clearly disclose that a different adjustment of property rights is in order before the Court of Appeals will disturb the trial court's judgment.

*Mary E. Bennett,* for plaintiff.

*George A. Sullivan,* for defendant on appeal.

Before: BRONSON, P.J., and MACKENZIE and J. L. BANKS,* JJ.

BRONSON, P.J. Plaintiff, Arlene Parrish, and defendant, Albert Parrish, were married on April

---

* Circuit judge, sitting on the Court of Appeals by assignment.

17, 1955. Four children were born of the marriage, none of whom were minors at the time that plaintiff filed her complaint for divorce. An order of divorce was entered on March 31, 1983, awarding plaintiff $25 per week alimony and allocating the marital assets between the parties. Plaintiff and defendant appeal as of right from that order.

Laurie Parrish, the parties' youngest child, suffers from cerebral palsy. She was 18 years of age at the time that this action was commenced and residing with plaintiff. Although the trial court did not consider the question of child support at trial, the court admitted testimony pertaining to expenses generated by the care and support of Laurie, over defendant's objections, and recognized Laurie's condition and the plaintiff's responsibility for her daughter in awarding alimony. The judgment of divorce ordered defendant to pay plaintiff $25 per week alimony "for so long as the parties' child, Laurie Ann Parrish, is alive and in the care, custody and control of the plaintiff, Arlene L. Parrish, and as long as plaintiff shall assume and pay the expenses of care and custody of said child".

Defendant argues that neither the child support nor alimony statutory provisions authorized the $25 per week award. Plaintiff contends that the trial court erred in not considering an award of child support. We hold that the circuit court, as a court of equity, was not precluded from taking into account plaintiff's assumption of responsibility for the support of her handicapped child in determining an alimony award.

Jurisdiction in divorce proceedings is purely statutory, and the jurisdiction of the court is not helped by any consideration of general equities. *Winter v Winter,* 276 Mich 665, 667; 268 NW 774 (1936); *Merchant v Merchant,* 130 Mich App 566,

571; 343 NW2d 620 (1983); *Ewald v Ewald,* 14 Mich App 665, 669; 166 NW2d 49 (1968). Once the court obtains jurisdiction, however, it may consider general principles of equity in determining an appropriate alimony award. *McLain v McLain,* 108 Mich App 166, 172; 310 NW2d 316 (1981).

Jurisdiction over child support orders is provided in MCL 552.17a; MSA 25.97(1):

"The court shall have jurisdiction in making such order or judgment relative to the minor children of such parties as authorized in this chapter to award custody of each child to 1 of the parties or a third person until each child has attained the age of 18 years and may require either parent to pay such allowance as may be deemed proper for the support of each child until each child shall have attained that age and may in case of exceptional circumstances, require payment of such allowance for any child after he attains that age. However, on application for modification of a judgment or order where applicant is in contempt, for cause shown, the court may waive the contempt and proceed to a hearing without prejudice to applicant's rights and render a determination on the merits."

Plaintiff contends that this clause evinces the legislative intent to authorize circuit courts to order support for children who, because of "exceptional circumstances", cannot be deemed capable of independence at the age of 18. Although plaintiff presents a compelling argument, previous decisions of the courts of this state preclude us from subscribing to plaintiff's construction of the child support statute.

In *Rybinski v Rybinski,* 333 Mich 592, 597; 53 NW2d 386 (1952), the Supreme Court held that under the statute providing for care, custody and maintenance of a minor child, as well as under principles of common law, the trial court could not

order support for the child of parties to a divorce action after the child had reached her majority.

The Supreme Court considered the significance of the "exceptional circumstances" language in *Johnson v Johnson,* 346 Mich 418; 78 NW2d 216 (1956). The "exceptional circumstances" alleged were the child's qualifications and desire to attend college. The Court read the ·statute as allowing support beyond the age of 18 upon a proper showing of circumstances, but affirmed the rule that the court could not order support beyond the age of majority (21 years old at that time). In *Ovaitt v Ovaitt,* 43 Mich App 628, 638; 204 NW2d 753 (1972), this Court held that the circuit court could continue an order for support beyond minority (21) where the children were minors at the time of the entry of such order or judgment.

The effect of the Age of Majority Act, MCL 722.51 *et seq.;* MSA 25.244(51) *et seq.* (lowering the age of majority to 18) on the statute's "exceptional circumstances" clause was examined by the Supreme Court in *Price v Price,* 395 Mich 6; 232 NW2d 630 (1975). The Court's ruling was based on the saving clause of the Age of Majority Act, MCL 722.54; MSA 25.244(54), but, in dicta, the Court noted:

"While our disposition in this case rests upon the applicability of the saving provision, we are also inclined to the view that even after the effective date of the Age of Majority Act a court may enter an order or amend an order to provide for the college education of a person for whom a support order had been entered before he or she was 18. The Age of Majority Act does not purport to deprive persons between the ages of 18 and 21 of any rights theretofore enjoyed by them, but instead grants to persons of 18 the rights and legal capacities formerly withheld until they were 21. Since a college education has long come within the purview of

'exceptional circumstances' recognized by the support statute, *Johnson v Johnson,* 346 Mich 418, 426; 78 NW2d 216 (1956), it would appear that such an order ought to be entirely proper for the period between the ages of 18 and 21 years. Further, to interpret the two statutes otherwise would render nugatory the entire provision concerning 'exceptional circumstances' in the support statute." *Price, supra,* p 11, fn 5.

Similarly, in *Charlton v Charlton,* 397 Mich 84; 243 NW2d 261 (1976), the applicability of the saving clause rendered it unnecessary for the Supreme Court to reach the issue of whether the circuit court could have ordered support under the "exceptional circumstances" clause to a child who was over 18 at the time of trial.

The Court of Appeals has had occasion to review the effect of the "exceptional circumstances" clause where the Age of Majority Act saving clause no longer governed. In those decisions, this Court consistently held that a child who had reached the age of 18 years was statutorily precluded from being the subject of a child support award unless there had existed a prior order of the court or a prior agreement between the parties to provide support beyond the child's eighteenth birthday. *Boyd v Boyd,* 116 Mich App 774, 786; 323 NW2d 553 (1982); *Garrett v Garrett,* 108 Mich App 258, 260-261; 310 NW2d 355 (1981); *Sumerix v Sumerix,* 106 Mich App 7, 8-9; 307 NW2d 727 (1981); *Wagner v Wagner,* 105 Mich App 388, 391-394; 306 NW2d 523 (1981); *McNames v McNames,* 93 Mich App 477, 481; 286 NW2d 892 (1979).

We find ourselves constrained by the language of MCL 552.17a; MSA 25.97(1) and the aforementioned decisions of our Courts to hold that the circuit court has no jurisdiction to order support to a child beyond the age of 18 unless the court previously obtained jurisdiction over the child

while the child was a minor. Because at no time during the pendency of this action was Laurie Parrish under 18 years of age, the trial court had no jurisdiction to award child support for her under MCL 552.17a; MSA 25.97(1).

Although the trial court refused to consider the question of child support for Laurie, the court discussed plaintiff's responsibility for Laurie's support when it ordered defendant to pay alimony to plaintiff. Unquestionably, the court had statutory authority to award alimony. MCL 552.23; MSA 25.103 provides in pertinent part:

> "(1) Upon every divorce from the bond of matrimony and also upon every divorce from bed and board if the estate and effects awarded to either party shall be insufficient for the suitable support and maintenance of either party and such children of the marriage as shall be committed to the care and custody of either party, the court may further award to either party such part of the real and personal estate of either party and such alimony out of the estate real and personal, to be paid to either party in gross or otherwise as it shall deem just and reasonable, having regard to the ability of either party and the character and situation of the parties, and all the other circumstances of the case."

In this case, the issue of alimony is *not* one of jurisdiction, but whether the court erred by considering plaintiff's assumed responsibility for her handicapped daughter's support in determining the alimony award.

This Court reviews an order of alimony *de novo,* but it "will not modify an alimony award unless it is convinced that, sitting in the position of the trial court, it would have reached a different result". *Boyd, supra,* p 786. In *McLain v McLain, supra,* pp 171-172, this Court set forth a number of factors that our Courts have considered in determining whether alimony should be awarded:

"1. The past relations and conduct of the parties.

"2. The length of the marriage.

"3. The ability of the parties to work.

"4. The source of and amount of property awarded to the parties.

"5. The age of the parties.

"6. The ability of the parties to pay alimony.

"7. The present situation of the parties.

"8. The needs of the parties.

"9. The health of the parties.

"10. The prior standard of living of the parties and whether either is responsible for the support of others.

"11. General principles of equity." (Citations omitted.)

The statutory language provides for an alimony award where the "estate and effects awarded to either party shall be insufficient for the suitable support and maintenance of either party and such children of the marriage as shall be committed to the care and custody of either party". Defendant argues that this language should be construed as referring only to a parent's responsibility for minors.

Over a century ago, our Supreme Court had occasion to consider whether a court could, as part of an alimony award, order a divorced father to pay support to his adult invalid child.[1] In *Chaffee v Chaffee,* 15 Mich 184, 190 (1867), an equally divided Court affirmed the lower court's judgment which had denied alimony to the wife as well as the request for support for the daughter. Justice CHRISTIANCY, although opining that the wife was entitled to alimony, continued:

"But the maintenance should, I think, be confined to

---

[1] At that time, there was no separate statutory provision for child support. The relevant statute provided for "the support and maintenance of the wife and children".

the wife. The daughter is above the age of majority, and however desirable it might be that she should be provided for with the mother, I can discover no recognized principle upon which it can be done by a decree in this proceeding."

Neither this statement nor the rule of stare decisis compel a similar result in the instant case. In the first place, where, as in *Chaffee, supra,* a lower court's decision is affirmed by an evenly divided Court, "[t]he status quo is maintained until a question receives authoritative treatment by a majority of the entire Court". *Negri v Slotkin,* 397 Mich 105, 112; 244 NW2d 98 (1976) (JUSTICE COLEMAN, *dissenting).* The other half of the Court did not address the issue of maintenance for the child since, on entirely different grounds, it found the wife was not entitled to alimony.

"The clear rule in Michigan is that a majority of the Court must agree on a ground for decision in order to make that binding precedent for future cases. If there is merely a majority for a particular result, then the parties to the case are bound by the judgment but the case is not authority beyond the immediate parties." *People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973).

Furthermore, the plaintiff in *Chaffee* had requested direct support payments for her daughter. In the instant case, the court ordered defendant to pay alimony to plaintiff and the payments only indirectly benefited Laurie. Most significantly, the court specifically indicated that if plaintiff died the payments would cease. Thus, we reject defendant's claim that the alimony payments are but disguised child support payments.

At common law, parents had no obligation to support their adult children. *Stilson v Gibbs,* 53

Mich 280, 282; 18 NW 815 (1884).[2] Certain jurisdictions have fashioned an exception to the rule that parents have no legal obligation to support an adult child where the child is mentally or physically incapacitated and incapable of self-support.[3] Apparently, the rule set forth in *Stilson* remains the law of this state.

The absence of a legal obligation to support her handicapped daughter did not, however, preclude the circuit court's consideration of plaintiff's voluntarily assumed obligation for her daughter's support. In holding that a party's responsibility for the support of others is a factor to evaluate in awarding alimony, *Johnson, supra,* p 427, the Supreme Court impliedly recognized that "responsibility" is not limited to "legal responsibility". After all, in awarding alimony, the courts always

[2] However, there may be parental liability for the support of adult children who became a "public charge". *Stilson, supra,* p 282.

[3] See *Crain v Mallone,* 130 Ky 125, 129-130; 113 SW 67 (1908), where the Kentucky court stated:

"The duty and obligation of a parent to care for his offspring does not necessarily terminate when the child arrives at age or becomes an adult; nor is it limited to infants and children of tender years. An adult child may from accident or disease be as helpless and incapable of making his support as an infant, and we see no difference in principle between the duty imposed upon the parent to support the infant and the obligation to care for the adult, who is equally, if not more, dependent upon the parent. In either case the natural as well as the legal obligation is the same, if the parent is financially able to furnish the necessary assistance."

Also see *In re Marriage of Pender,* 593 SW2d 230 (Mo App, 1979); *Maberry v Maberry,* 183 Mont 219; 598 P2d 1115 (1979); *Feinberg v Diamant,* 378 Mass 131; 389 NE2d 998 (1979) (recognizing this principle); *McBride v Lomheim,* 82 SD 263; 144 NW2d 564 (1966); *Fincham v Levin,* 155 So 2d 883 (Fla App, 1963); *Maitzen v Maitzen,* 24 Ill App 2d 32; 163 NE2d 840 (1959); *Zakrocki v Zakrocki,* 115 Ind App 556; 60 NE2d 745 (1945); *Prosser v Prosser,* 159 Kan 651; 157 P2d 544 (1945); *Commonwealth ex rel Groff v Groff,* 173 Pa Super 535; 98 A2d 449 (1953); *Sayne v Sayne,* 39 Tenn App 422; 284 SW2d 309 (1955); *Schultz v Western Farm Tractor Co,* 111 Wash 351; 190 P 1007 (1920).

Certain states have statutes codifying a similar exception. See *In re Kasner's Estate,* 175 Misc 832; 25 NYS2d 488 (1941); *Anderson v Anderson,* 124 Cal 48; 56 P 630 (1899).

consider all types of factors that have nothing to do with legal obligations, *e.g.,* the parties' prior standard of living.

Finally, we note that the alimony statute, unlike the child support statute, does not refer only to "minor" children. In the absence of a statutory definition of a term, it is to be given its plain and ordinary meaning. *Bingham v American Screw Products Co,* 398 Mich 546, 563; 248 NW2d 537 (1976). Had the Legislature intended the term "children" to mean "minor children", it could have included the word "minor" in the alimony statute as it did in the child support statute.[4]

We conclude that plaintiff's assumption of financial support for her daughter was a circumstance properly considered by the circuit court in awarding alimony.

Plaintiff argues that the amount of alimony was insufficient. In determining the amount of alimony to be awarded, the court should consider (1) the duration of the marriage, (2) the contributions of the parties to the joint estate, (3) the age of the parties, (4) their health, (5) their stations in life, (6) the necessities and circumstances of the parties, and (7) the earning ability of the parties. *York v York,* 113 Mich App 306, 309; 317 NW2d 604 (1982).

The record reveals that the parties' combined income during the marriage was approximately $44,184. Although defendant had been the primary breadwinner, plaintiff had contributed financially through her secretarial earnings and through her assistance in the antique business. Defendant's

[4] Courts from other states have employed a similar analysis in construing the relevant statutory provisions. See, *e.g., Young v Young,* 609 SW2d 758 (Tex, 1980); *Wilkinson v Wilkinson,* 41 Colo App 364; 585 P2d 599 (1978); *French v French,* 117 NJ 696; 378 A2d 1127 (1977); *Dehm v Dehm,* 545 P2d 525 (Utah, 1976).

gross income in 1980 was $32,000. On the other hand, plaintiff's annual income was reduced to $15,260, which included Laurie's annual Social Security benefits of $2,460. While defendant received the fully paid marital home, plaintiff would face monthly mortgage payments of $360. Even without specific testimony as to Laurie's ability to care for herself, we conclude that the alimony award of $25 per week to plaintiff was, under the circumstances, so inadequate as to constitute an abuse of discretion. We, therefore, remand this case to provide the circuit court the opportunity to modify the alimony award in view of the parties' present circumstances.

Plaintiff also challenges the circuit court's allocation of marital assets. The major property dispute at trial was over both the existence and value of antique items collected by the parties for business and hobby purposes. The court valued the antique musical items at $43,569.

This Court will not reverse or modify a property division in a divorce case unless we are convinced that we would have reached another result had we occupied the position of the trial court. *Davey v Davey,* 106 Mich App 579, 582; 308 NW2d 468 (1981). The trial court has great discretion in the adjustment of property rights. In dividing marital assets, the trial court is directed to examine several factors: the duration of marriage, contributions of the parties to the joint estate, the parties' station in life and earning abilities, fault or past misconduct, and other equitable circumstances. *Davey, supra,* pp 581-582. The record on appeal should affirmatively and clearly disclose that a different adjustment of property rights is in order before we disturb the trial court's judgment. *Zamfir v Zamfir,* 92 Mich App 170, 173; 284 NW2d 517 (1979).

Plaintiff contends that the circuit court's find-
ings are insufficient to determine if the court was
fair and equitable under the circumstances. The
judge stated that she had reviewed the disputed
items and made an independent decision as to
each item as to whether or not it existed and
whether or not it was still in defendant's posses-
sion, and then made an independent decision as to
the value of that particular item. The judge then
added the sum of those items to the average
appraised values of the items which the parties
agreed were marital assets. Contrary to plaintiff's
assertion, the court was not obligated to make a
finding on the record as to the value of each item.
The record clearly reflects that the court conscien-
tiously reviewed the testimony and exhibits and
attempted to resolve the conflicts presented. We
find no abuse of discretion.

Plaintiff further challenges the circuit court's
rulings concerning defendant's assumption of re-
sponsibility for the payment of debts and his inter-
est in a pension plan. Our reading of the record
reveals that the court did not err in adopting
defendant's uncontroverted testimony that the
marital debts at the time of separation were ap-
proximately $19,500. Plaintiff's claim that she had
incomplete information at the time of trial con-
cerning defendant's pension plan is not properly
before this Court. Plaintiff should have either filed
a motion to modify the judgment of divorce under
GCR 1963, 528.3, on the basis of newly discovered
evidence or pursued an independent action show-
ing fraud upon the court.

Plaintiff may file a motion with the circuit court
showing the attorney fees and costs incurred on
appeal and, if applicable, her inability to bear all
or a portion of those expenses. Upon a proper
showing, the trial court may determine the

amount of expenses reasonably incurred and properly recoverable and enter an order in accordance with that determination.

Affirmed in part and remanded for modification of the alimony award. We do not retain jurisdiction.